U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 DEC 12 AM 10: 53

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANDREA KONTROVITZ SHADER,           )
                                    )
        Appellant,                  )
                                    )
        v.                          )        Case No. 5:14-cv-00152
                                    )
BRATTLEBORO SAVINGS & LOAN          )
ASSOCATION and RIVER VALLEY         )
CREDIT UNION,                       )
                                    )
        Appellees.                  )

## OPINION AND ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE BANKRUPTCY COURT'S JULY 1, 2014 ORDER DISMISSING APPELLANT'S CASE WITH PREJUDICE
(Doc. 3)

Debtor Andrea K. Shader ("Debtor") appeals a July 1, 2014 Order from the United States Bankruptcy Court for the District of Vermont denying Debtor's motion to continue and dismissing her case with prejudice. Debtor also appeals: (1) a March 27, 2014 Order reopening Debtor's bankruptcy case without reinstating the automatic stay; (2) an April 9, 2014 Order denying Debtor's motion to reconsider; and (3) a June 30, 2014 Order that allowed David Dunn, Esq. to represent both Brattleboro Savings & Loan ("Brattleboro Savings") and River Valley Credit Union ("River Valley") (collectively, "the Banks"). The Banks oppose Debtor's request for relief, asserting that the Bankruptcy Court properly dismissed Debtor's case with prejudice and did not abuse its discretion in the remaining orders which are the subject of this appeal.

On October 3, 2014, this court held oral argument. The parties' post-hearing filings were completed on October 14, 2014, at which point the court took the matter under advisement. Debtor is self-represented. Attorney Dunn represents the Banks.

I.      **Factual and Procedural Background.**

On April 7, 2010, Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. In her bankruptcy petition, Debtor stated she intended to reaffirm the mortgages secured by her personal residence, but she later decided not to reaffirm those debts because of the loss of her employment. On January 8, 2013, the Bankruptcy Court granted Debtor a discharge and closed the case. On January 23, 2014, Debtor moved to reopen the bankruptcy case, alleging the Banks had violated the automatic stay and discharge injunction by attempting to collect on Debtor's mortgages.

On February 7, 2014, the Bankruptcy Court held a hearing to determine whether to reopen Debtor's bankruptcy case. At the hearing, "Brattleboro Savings & Loan . . . admitt[ed] that there was a violation of the automatic stay." (Doc. 3-39 at 8:4-8:5.) River Valley stated its "position is somewhat similar to that of Brattleboro Savings & Loan," *id.* at 11:14-11:16, but contested "any violation of the stay on behalf of the credit union[.]" *Id.* at 13:5-13:6.

After discussing some of the alleged violations of the automatic stay, the Bankruptcy Court informed Debtor: "the issue here is whether you suffered any damages," *id.* at 14:13-14:14, and noted that the record did not show Debtor suffered damages "other than obviously the, you know, stress of finding out that the foreclosure was filed and having to take some steps to take care of it." *Id.* at 15:13-15:15. The Bankruptcy Court advised Debtor that reopening the case "in and of itself will reinstate the stay[.]" *Id.* at 3:23. Thereafter, the Bankruptcy Court issued a scheduling order that stated: "Creditors to submit collection files to Debtor by 2/14. Debtor to file supplement to Motion by 02/21. Creditors may file response to supplement by 2/28. Hearing continued to 03/21." (Doc. 3-9 at 1.)

On February 18, 2014, Debtor filed a motion asking that she be granted an additional week to file her supplemental materials with the Banks' response due a week thereafter. She advised that because she was not an attorney, she had sought assistance from a bankruptcy attorney who was reviewing her file and whom she hoped would take her case. She asked to continue the hearing scheduled for March 21, 2014 to March 27,

2014. On February 18, 2014, without apparently awaiting the Banks' response, the Bankruptcy Court granted Debtor's motion regarding the deadlines for the parties' filings, but denied her motion for a continuance.

On February 28, 2014, Debtor filed a supplemental brief that identified the Banks' alleged violations of the automatic stay and discharge injunction. Debtor also provided a timeline of the Banks' collections efforts, which included allegations of dozens of contacts from the Banks with descriptions and dates of those contacts. Debtor attached exhibits where the alleged contacts occurred in writing. At the Bankruptcy Court's continued hearing on March 21, 2014, the parties contested the scope of the alleged violations committed by the Banks. At that time, River Valley admitted "that some phone calls have been made, those phone calls were made in—a letter was sent in response and a request for information." (Doc. 3-40 at 7:20-7:22.) Brattleboro Savings, in turn, requested clarification on "whether the stay goes to stop the pending foreclosure action in Superior Court . . . we do not believe it does[.]" *Id.* at 9:12-9:14. The Bankruptcy Court took Debtor's motion to reopen the bankruptcy case under advisement.

On March 27, 2014, the Bankruptcy Court ordered that Debtor's bankruptcy case be reopened to "afford the Debtor an opportunity to prove her claims for damages arising from alleged violations of the automatic stay and discharge injunction." (Doc. 3-43 at 2.) The March 27, 2014 Order further provided that "the automatic stay shall not be reimposed" and that Brattleboro Savings could proceed with its "foreclosure action in state court against property of the estate." *Id.* The Order noted "that although the Debtor is proceeding in this matter without the benefit of counsel, she is not the typical *pro se* party. Rather, she appears to be well-versed in the applicable law and has made several complex legal arguments on her behalf." *Id.*

On April 3, 2014, Debtor filed a motion to reconsider that portion of the Bankruptcy Court's March 27, 2014 Order which stated that the automatic stay would not be reimposed. Debtor argued the stay was necessary to protect her interests and the Banks failed to show good cause why it should not be reimposed. Debtor stated that in light of the Bankruptcy Court's advice that reopening the bankruptcy case "in and of

3

itself will reinstate the stay," (Doc. 3-39 at 3:23), she did not understand that she was obligated to object to Brattleboro Savings' request for clarification regarding whether the state foreclosure proceedings would be stayed.  On April 9, 2014, the Bankruptcy Court declined to reconsider its March 27, 2014 Order because:

> (1) the Debtor's motion to reopen asked solely to have the case reopened so the Debtor could pursue stay violation damages against two banks, and did not ask for a stay of the related foreclosure action,
> (2) the Debtor never objected to [Brattleboro Savings'] request that if the case was reopened the stay not be reimposed as to its state court foreclosure action,
> (3) the Debtor has not presented any new facts or demonstrated any error of law in the decision she seeks to have reconsidered, and
> (4) the Debtor has failed to show that she made a mistake, or was precluded from raising an argument in opposition to [Brattleboro Savings'] request, based upon her *pro se* status.

(Doc. 3-17 at 3.)  The Bankruptcy Court noted that it found "Debtor's assertions attributing her failure to object, alleged reliance upon the Court's statements, and resulting mistake with respect to reimposition of the stay to be both disingenuous and unpersuasive."  *Id.*  It further explained:

> As noted in [the court's] March [27]th order, the Debtor "is not the typical *pro se* party.  Rather, she appears to be well-versed in the applicable law and has made several complex legal arguments on her behalf."  There was nothing particularly complex in the Court's comment about reimposition of the stay as to the state court foreclosure action at the February 7th hearing and the Debtor did not respond to it.

*Id.* at 2.[1]  On April 15, 2014, the Bankruptcy Court informed the parties that the hearing on Debtor's damages was scheduled for July 1, 2014.

To prove her damages, Debtor hired a forensic psychologist, Gladys Frankel, Ph.D., to evaluate the impact of the Banks' alleged violations of the automatic stay and discharge injunction on Debtor's mental health.  On June 2, 2014, Debtor disclosed Dr. Frankel as an expert witness to the Banks via email.  On June 5, 2014, Brattleboro Savings moved to shorten the response period for interrogatories to twenty days.  On

---

[1]  The Order is dated March 26, 2014, but the filing date on the Order is March 27, 2014.

June 6, 2014, without awaiting a response from Debtor, the Bankruptcy Court granted
Brattleboro Savings' motion because "the evidentiary hearing in this matter is scheduled
for July 1 and 2, 2014, and Debtor did not designate an expert until June 2, 2014, and
Brattleboro Savings & Loan timely filed its Interrogatories and Requests for Production
of Documents shortly thereafter[.]" (Doc. 3-21 at 1.) The June 6, 2014 Order required
Debtor to "respond to the Interrogatories and Requests for Production of Documents
within twenty (20) days of service thereof, so that the responses will be timely available
to Brattleboro Savings & Loan." *Id.* The Bankruptcy Court imposed the same deadlines
for any discovery requests made by River Valley. Thereafter, Debtor did not oppose the
shortened deadlines.

On June 26, 2014, Debtor filed a motion to disqualify River Valley's counsel,
Steven Bonnett, Esq., for a conflict of interest based on Debtor's alleged consultation
with Attorney Bonnett regarding Debtor's divorce, mortgages, and an individual who
falsely claimed Debtor owed him money. Attorney Bonnett initially objected to the
motion to disqualify, asserting that he did not discuss any matter related to Debtor's
mortgages and on the further ground that Debtor's allegations lacked evidentiary support.
He subsequently supplemented his filing to acknowledge he had in fact received
information from Debtor about her divorce. On June 30, 2014, one day prior to the
scheduled hearing, Attorney Bonnett moved to withdraw as counsel and requested that
the Bankruptcy Court permit Attorney Dunn, who represented Brattleboro Savings, to
represent both Banks. Attorney Bonnett continued to contest the existence of a conflict
of interest, but stated that he would withdraw to avoid the possibility that "the trial would
be continued." (Doc. 3-29 at 2, ¶ 5.) On June 30, 2014, without awaiting a response
from Debtor, the Bankruptcy Court granted Attorney Bonnett's motion to withdraw and
allowed Attorney Dunn to represent both Banks. The Bankruptcy Court also ruled "[t]he
hearing on the merits presently scheduled for July 1 and July 2, 2014 shall go forth as
previously ordered." (Doc. 3-31 at 1, ¶ 3.)

On June 30, 2014, Debtor produced a report from Dr. Frankel, in which Dr.
Frankel opined: "it is my opinion, with a reasonable degree of certainty, that Ms. Shader

5

experienced emotional consequences as a result of the ongoing harassment she experienced." (Doc. 3-36 at 5.) The report is dated June 23, 2014, but Debtor advised she did not receive it until June 30, 2014.

On June 30, 2014, the Banks moved for sanctions, asking the Bankruptcy Court to exclude any testimony from Dr. Frankel at the scheduled hearing. The Banks' motion stated that Debtor had not yet responded to their discovery requests and they would be prejudiced by receiving any responses on the eve of trial.

On July 1, 2014,[2] Debtor sought a continuance because Dr. Frankel was not available on the scheduled hearing dates and Dr. Frankel was essential to prove Debtor's damages. Debtor attached a letter from Dr. Frankel that stated: "Unfortunately due to my pre-arranged scheduling, I am not available July 1, 2, or 3. I would be available on July 7, 2014." (Doc. 3-36 at 3.) The letter is not dated but Debtor represented she received it on June 30, 2014 after she inquired with Dr. Frankel about her preparations for the July 1, 2014 hearing.

At the July 1, 2014 hearing, the Bankruptcy Court began by addressing the pending motions and stated it would first hear Debtor's motion to continue. Debtor explained the grounds for the continuance as follows:

> [T]he expert witness, who I believe is the cornerstone of my case, is not available, unfortunately, today or tomorrow for this matter although I had given her notice of that several times. And I'm very reluctant to proceed without her because I think that her being absent from the case will severely prejudice my opportunity to have a fair outcome.

(Doc. 3-41 at 2:20-2:25.) The Banks objected to a continuance because they "thought that the reasons were a little bit light with respect to [Dr. Frankel] not being available," *id.* at 3:3-3:4, and "there's been adequate time to get the expert here." *Id.* at 4:6-4:7. The Banks' counsel noted that he had filed a motion to exclude Dr. Frankel, at "5:15

---

[2] The motion to continue is dated June 30, 2014; however, the document indicates it was sent at "2014-07-01 00:53:15 (GMT)." (Doc. 3-36 at 1.) The Bankruptcy Court's July 1, 2014 Order noted that the motion was filed on July 1, 2014 because Vermont Local Rule of Bankruptcy Procedure 5005-2(c) states that documents submitted by email or fax are "deemed filed as of the date and time the Clerk's Office enters it [on the docket.]"

yesterday," *id.* at 4:23, because he only "had a few hours [to review Dr. Frankel's report],
and [he did not] feel that's adequate for [him] to actually respond, and [he thought] that
both [his] clients would be prejudiced having to deal with coming up with an adequate
response to the expert report." *Id.* at 5:17-5:20. The Banks further stated:

> That having been said, I do have witnesses from Brattleboro Savings &
> Loan here today. So to the extent that the Court is considering a
> continuance, I think it would be a continuance only with respect to that
> expert, and I would like to move forward with the Brattleboro Savings &
> Loan witnesses today.
>
> I had communication with Ms. Shader yesterday and she said that she
> would be willing to do—well, this was prior to the issues with respect to
> the unavailability of the expert. That as far as splitting days for purposes of
> convenience of my clients, she would do Brattleboro Savings & Loan
> witnesses today and River Valley Credit Union tomorrow. So that's why
> we have witnesses from the Brattleboro Savings & Loan. So I'd hate to
> waste this opportunity and the time that they've spent to come up here.

*Id.* at 3:4-3:18. The Bankruptcy Court denied the continuance because Debtor had notice
of the hearing as of April 15, 2014 and the Bankruptcy Court had already shortened
Debtor's time to respond to the Banks' discovery requests to twenty days.[3]

    After the Bankruptcy Court denied the continuance, Debtor moved to dismiss the
case because she was not "confident proceeding with this matter," without the benefit of
Dr. Frankel's testimony. (Doc. 3-41 at 6:16-6:17.) The Banks did not object "as long as
[the dismissal was] with prejudice." *Id.* at 6:22-6:23. The Bankruptcy Court asked
Debtor if she understood that dismissal would be "with prejudice so that [Debtor] would

---

[3] After the hearing, the Bankruptcy Court issued a written Order that further explained why it
denied the continuance:

> (1) the Debtor had had ample opportunity - more than two months - to prepare
> and schedule the availability of her witnesses, (2) the Creditors and witnesses
> were ready to proceed, and (3) the Debtor's failure to raise this issue until the eve
> of trial all weighed against the granting of relief.

(Doc. 3-37 at 2.)

not be able to bring this matter again." *Id.* at 6:24-7:1. Debtor sought clarification of the

meaning of a dismissal with prejudice, to which the Bankruptcy Court responded:

> The issue of a violation of the stay and the violation of the discharge
> injunction can be brought in either state court or federal court, but once you
> get a ruling by this Court that it's dismissed with prejudice, that means that
> it will not be able to be heard in any other court.

(Doc. 3-41 at 7:7-7:8.) [4]  The Bankruptcy Court explained:

> This was your opportunity and you filed your pleadings and you've gotten
> this far. If you decide you want to dismiss the action, that is certainly your
> prerogative and I understand your rationale. I just want to be clear that the
> bank and the credit union have prepared for trial, they're here, they're ready
> to proceed today. This is your opportunity.

*Id.* at 7:10-7:16. The Bankruptcy Court offered Debtor a ten-minute recess to consider

the implications of a dismissal with prejudice.

Before deciding whether to agree to a dismissal with prejudice, Debtor raised two

additional concerns about the hearing. First, Debtor stated she may need to call

unexpected witnesses based on Attorney Dunn's exhibits, which Attorney Dunn stated he

would only use if "Ms. Shader had stated that she had not been convicted of perjury or

false swearing." *Id.* at 8:19-8:21. Debtor responded that she "would need to be able to

have time to think through and get some advice about who I should have here with me in

connection with [Attorney Dunn's evidence]," *id.* at 9:6-9:8, and Debtor had "just

---

[4]  A debtor can only bring an action for a violation of the automatic stay in the bankruptcy court.
In addressing whether a claim for a violation of the automatic stay can be brought in district
court, the Second Circuit held "state tort claims alleging violations of an automatic stay must be
'brought in the bankruptcy court itself, and not as a separate action in the district court.'" *E.
Equipment & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117, 121 (2d Cir.
2001) (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914, 916 (9th Cir.
1996) (ruling that allowing state courts to hear a claim for a violation of an automatic stay posed
the risk "of state courts, in effect, interfering with the whole complex, reticulated bankruptcy
process itself.")). More recently, the Second Circuit observed that the bankruptcy courts
"'ha[ve] exclusive jurisdiction to determine the applicability of the automatic stay and to grant
relief from the stay.'" *United States v. Colasuonno*, 697 F.3d 164, 172 n.4 (2d Cir. 2012)
(quoting 3 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 362.08 (16th
ed.)). Similarly, where a debtor alleges a "violation of a bankruptcy court's § 524 discharge
order, relief is properly sought in the first instance from the bankruptcy court." *Yaghobi v.
Robinson*, 145 F. App'x 697, 699 (2d Cir. 2005) (citing *E. Equip.*, 236 F.3d at 121).

8

[found] out about [the evidence] a half an hour ago." *Id.* at 9:9. In response to Debtor's

concerns regarding the Banks' untimely disclosure,[5] the Bankruptcy Court ruled:

> [I]n the event that this were to proceed, and in the event you were to give an
> answer which would prompt Mr. Dunn to seek to introduce that evidence,
> we will address the issue at that time because it seems to me that that's a
> pretty speculative possibility at this point. So I would not continue the
> matter based on that alone.

(Doc. 3-41 at 9:10-9:15.)

The second issue Debtor raised was whether Attorney Dunn should be disqualified

from representing both Banks, stating that:

> [she did not] understand, as a layperson, how Attorney Dunn can in this
> matter represent both River Valley Credit Union and Brattleboro Savings &
> Loan, but in the state proceeding where he is of record for the Brattleboro
> Savings & Loan, how he can take a position in that matter adverse to the
> position that he's taking in this matter.

*Id.* at 10:4-10:9. Debtor pointed out that one of the banks had filed a counterclaim

against the other in the foreclosure action. Attorney Dunn responded:

> Your Honor, there is no dispute. River Valley—the foreclosure was
> initiated by the first mortgagee, Brattleboro Savings & Loan. River Valley
> Credit Union holds a second mortgage. Pursuant to standard practice in
> Vermont, the second mortgagee had the choice to also bring a foreclosure
> action within that initial action, and that is what they did.

*Id.* at 10:19-10:24. Attorney Dunn advised that Debtor had sought an informal opinion

regarding the alleged conflict from bar counsel and was advised that bar counsel does not

offer informal opinions. The Bankruptcy Court denied the motion to disqualify Attorney

Dunn because "nothing in the record at this point . . . would raise any conflict of

interest," *id.* at 11:6-11:7, and "it's unusual that there would be a dispute between the first

and second mortgage holder[.]" *Id.* at 11:8-11:10.

---

[5] According to Vermont Local Bankruptcy Rule 7016-1(d), "[p]arties must file a joint pre-trial
statement at least seven days before a trial is scheduled to begin." The statement must contain an
"identification of witnesses," Vt. LBR App. VI(h), and an "identification of exhibits." Vt. LBR
App. VI(i). Similarly, a party requesting an evidentiary hearing, must "at least seven days before
the hearing . . . [identify] the witness(es) the requesting party will call to testify." Vt. LBR 9014-
1(b)(2)(E).

The Bankruptcy Court then returned to the issue of whether to dismiss the case
with prejudice and again offered Debtor a ten-minute recess "to think about whether you
want to proceed with your motion to dismiss or if you want to proceed with your case."
*Id.* at 11:15-11:16. Debtor responded by saying, "I'm very comfortable without a break
to just go ahead and dismiss this action." *Id.* at 12:6-12:7. Thereafter, the following
exchange ensued:

> THE COURT: Okay. The action is dismissed with prejudice.
>
> MR. DUNN: Thank you, Your Honor.
>
> THE COURT: You're welcome. The case will close promptly.
>
> (Court and clerk confer)
>
> THE COURT: So the motion to continue is [moot], as is the motion for sanctions
> I presume at this point, Mr. Dunn.
>
> MR. DUNN: I would consider that [moot] because the only sanction I sought was
> preclusion.
>
> THE COURT: Okay. Very good. Have a good day[.]

*Id.* at 12:8-12:18.

After the hearing, the Bankruptcy Court issued an Order dated July 1, 2014 which
stated:

> 1) the Debtor's Motion to Continue Hearing is DENIED;
> 2) the Debtor's Motion to Dismiss this contested matter seeking damages
> against [Brattleboro Savings] and [River Valley] for an alleged violation of
> the automatic stay and the discharge injunction is GRANTED, with
> prejudice;
> 3) the Creditors' Motion for Sanctions is DENIED as moot; and
> 4) the Clerk is directed to promptly close this Chapter 7 case.

(Doc. 3-37 at 2.)

Debtor raises five issues on appeal: (1) whether the Bankruptcy Court erred in
refusing to reinstate the automatic stay after the Bankruptcy Court told Debtor reopening
the case "in and of itself will reinstate the stay," (Doc. 3-39 at 3:23); (2) whether the

10

Bankruptcy Court erred by shortening Debtor's response time for the Banks' discovery requests; (3) whether the Bankruptcy Court erred by allowing Attorney Dunn to represent both Banks; (4) whether the Bankruptcy Court abused its discretion in denying Debtor's motion to continue; and (5) whether the Bankruptcy Court erred by dismissing Debtor's case with prejudice rather than without prejudice.

## II.     Conclusions of Law and Analysis.

### A.     Standard of Review.

Under 28 U.S.C. § 158(a)(1), "district courts . . . have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy courts. The district court "review[s] the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *In re Kran*, 760 F.3d 206, 209 (2d Cir. 2014) (internal quotation marks omitted). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The district court reviews the Bankruptcy Court's discretionary rulings to assess whether the Bankruptcy Court: "(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 291 (2d Cir. 2014) (internal quotation marks omitted).

### B.     Whether the Bankruptcy Court Erred in Denying Debtor's Motion to Reconsider Its April 9, 2014 Order.

Debtor argues that the Bankruptcy Court erred by denying her motion to reconsider its April 9, 2014 Order. Debtor points out that the Bankruptcy Court's refusal to reimpose the automatic stay was contrary to the Bankruptcy Court's statement that reopening the case would automatically reimpose the stay and she argues that, as a self-represented litigant, she did not understand that she was required to formally object to Brattleboro Savings' verbal request for clarification of this issue.

"'[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The Second Circuit reviews "[d]enials of motions for reconsideration . . . only for abuse of discretion." *Analytical Surveys*, 684 F.3d at 52.

As Debtor was representing herself, the Bankruptcy Court was "ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). It is "possible that a *pro se* litigant may be sufficiently experienced as to justify a court affording him only minimal solicitude and, at least under certain circumstances, a litigant's experience and knowledge may even justify complete withdrawal of solicitude for the entirety of an action[.]" *Id.* at 103. However, "the inference that a repeat litigant must be fully aware of the requirements of *all* stages of litigation merely as a result of frequent participation in legal actions is dramatically more attenuated," and a showing that a litigant participated in as many as "ten federal and state actions" does not justify withdrawing the solicitude given to *pro se* parties. *Id.*

In her supplemental response to the Banks' opposition to Debtor's *ex parte* motion to reopen her bankruptcy case, Debtor explained she had "worked as a paralegal in the Windham County area for over twenty (20) years" including at "her ex-husband's law firm." (Doc. 3-14 at 3.) Despite Debtor's apparent familiarity with the legal system, the record does not reflect that she had sufficient knowledge or experience to warrant failing to grant her the special solicitude ordinarily afforded to a self-represented party. Debtor had no apparent experience or training in bankruptcy law other than her own case and was entitled to have her submissions "construed liberally" and to have those submissions "read to raise the strongest arguments that they suggest[.]" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475, 477 (2d Cir. 2006) (internal quotation marks omitted).

The Bankruptcy Court informed Debtor that reopening the case "in and of itself will reinstate the stay." (Doc. 3-39 at 3:23.) No evidence in the record suggests that Debtor was "disingenuous" in relying on the Bankruptcy Court's statement of the law. (Doc. 3-17 at 3.) In light of Debtor's self-represented status, the better practice would have been for the Bankruptcy Court to acknowledge its misstatement of the law and

explain why it concluded that reinstating the stay was not necessary to protect Debtor's interests. However, reconsideration would not have altered the fact that "there is no automatic reinstatement of the automatic stay after the reopening of a closed bankruptcy case." *In re Crocker*, 362 B.R. 49, 57 (B.A.P. 1st Cir. 2007). "Because the stay under § 362 is 'automatic' and 'self-executing' only upon the filing of a bankruptcy petition, no authority exists for 'reinstating' an automatic stay that has been lifted." *In re Canter*, 299 F.3d 1150, 1155 n.1 (9th Cir. 2002). Instead, a debtor may seek an injunction from a bankruptcy court to stay related cases in another jurisdiction by invoking the bankruptcy court's powers outlined in 11 U.S.C. § 105(a). *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) (noting that "the bankruptcy court's authority to stay the litigation was invoked not only under section 362(a) but also under section 105 of the Bankruptcy Code, which grants broader authority[.]"). The Bankruptcy Court's solicitude for self-represented litigants does not extend to providing advice as to how they can best protect their interests. Accordingly, the Bankruptcy Court was not obligated to advise Debtor of her potential recourse under 11 U.S.C. § 105(a).

Because the Bankruptcy Court's April 9, 2014 Order denying reconsideration of its March 27, 2014 Order was neither clearly erroneous nor manifestly unjust, the Bankruptcy Court did not abuse its discretion in denying Debtor's motion. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (noting reconsideration is appropriate "to correct a clear error or prevent a manifest injustice.") (internal quotation marks omitted).

C. **Whether the Bankruptcy Court Abused its Discretion by Granting Brattleboro Savings' Motion to Shorten Discovery Response Deadlines Without Allowing Debtor Time to Respond.**

The Bankruptcy Court's June 6, 2014 Order directed Debtor to respond to the Banks' discovery requests regarding Dr. Frankel's opinions within twenty days. In this appeal, Debtor claims that the Bankruptcy Court erred in shortening the discovery deadlines for her expert witness disclosure without affording her an opportunity to object.

A party must generally respond within thirty days of being served with interrogatories or requests to produce. *See* Fed. R. Civ. P. 33(b)(2); 34(b)(2)(A); *see also* Fed. R. Bankr. P. 7033 ("Rule 33 F.R.Civ.P. applies in adversary proceedings."); Fed. R. Bankr. P. 7034 ("Rule 34 F.R.Civ.P. applies in adversary proceedings."). Written motions in bankruptcy court must "be served not later than seven days before the time specified for such hearing" and a "written response shall be served not later than one day before the hearing, unless the court permits otherwise." Fed. R. Bankr. P. 9006(d). However, "the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). "In considering such motions, courts should balance possible prejudice to other parties against the reasons advanced for reducing the time." 10 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 9006.09 (16th ed.).

After reciting the case's procedural history, the Bankruptcy Court stated it was shortening the time for Debtor to respond "so that the responses will be timely available to Brattleboro Savings & Loan." (Doc. 3-21 at 1.) Because the Bankruptcy Court did not await Debtor's response to the motion, Debtor did not have an opportunity to oppose the shortened response times or explain why she could not meet them. However, she did not oppose the shortened deadlines at any time prior to this appeal. And in this appeal, Debtor does not explain how the shortened deadlines prejudiced her or impacted her request for a continuance.

The Federal Rules of Bankruptcy Procedure provide the Bankruptcy Court with discretion to shorten response times without notice. In the circumstances of this case, it was reasonable for the Bankruptcy Court to exercise its discretion, so that the Banks received the discovery responses prior to the hearing date. Because of the advance notice of the hearing date, Debtor was aware that her expert witness disclosure should not be made on the eve of trial. *See Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) (noting a last minute disclosure of a psychiatrist prejudiced the defendant because the defendant had insufficient time to depose the psychiatrist and find its own expert witness). In any event, Debtor claims no unfair surprise as a result of the shortened discovery dates.

14

Moreover, nothing precluded her from objecting to the deadlines if she could not meet them.

Finally, the Bankruptcy Court's decision to shorten the discovery period without notice did not unduly prejudice Debtor—it was her expert's delay in providing responses that rendered it difficult for Debtor to comply with the Bankruptcy Court's Order.[6] In light of the ample notice of the July 1, 2014 hearing, the Bankruptcy Court did not abuse its discretion in shortening the discovery response period without awaiting Debtor's response.

### D. Whether the Bankruptcy Court Properly Allowed Attorney Dunn to Represent Both Banks.

Debtor argues that the Bankruptcy Court erred in refusing to disqualify the Banks' counsel due to an alleged conflict of interest arising out of the state foreclosure proceedings. Debtor maintains that the issue was not merely that the Banks both held mortgages secured by her real property, but also the existence of a pending counterclaim between them. *See* Vt. R. Prof'l Conduct 1.7(a)(1) ("[A] lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client."). Attorney Dunn represented to the Bankruptcy Court that there was no dispute between the Banks in the foreclosure action and the Bankruptcy Court accepted this explanation at face value.

The district court reviews a bankruptcy court's decision to deny a motion to disqualify an attorney for an abuse of discretion. *See GSI Commerce Solutions, Inc. v. BabyCenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010) ("We review a district court order disqualifying an attorney for an abuse of discretion."). "In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Id.* (internal

---

[6] At the July 1, 2014 hearing, Attorney Dunn stated that although he had received Dr. Frankel's report and C.V. on June 30, 2014, he had "not received responses to the rest of the interrogatories or the other requests to produce, including copies of the notes from interviews." (Doc. 3-41 at 5:1-5:4.) Debtor responded: "I didn't have control over the schedule with which she provided me with things so that I could provide them to Attorney Dunn, that is the reason that he does not have the rest of the information." *Id.* at 6:4-6:7.

quotation marks omitted). "[I]nterests are not considered adverse merely because it is possible to conceive a set of circumstances under which they might clash." *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 672 (Bankr. S.D.N.Y. 2006) (internal quotation marks omitted).

"Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its choice." *Scantek Med., Inc. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) (internal quotation marks omitted). As a result, "courts must guard against the tactical use of motions to disqualify counsel[.]" *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (internal quotation marks omitted). "[D]isqualification is warranted only if 'an attorney's conduct tends to taint the underlying trial,'" *GSI*, 618 F.3d at 209 (citation omitted), or when the "conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client[.]" *Nyquist*, 590 F.2d at 1246. "Not all violations of the legal code of ethics require dismissal or disqualification of counsel, and . . . the relevant inquiry [is] the possibility of prejudice at trial." *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 166-67 (2d Cir. 2013) (internal quotation marks omitted).

In this case, the record does not support a conclusion that the alleged conflict of interested undermined the Bankruptcy Court's confidence in Attorney Dunn's ability to represent both Banks, tainted the hearing, or prejudiced Debtor at trial. The Bankruptcy Court thus acted within its discretion in allowing Attorney Dunn to represent both Banks.

**E.      Whether the Bankruptcy Court Abused Its Discretion by Denying Debtor's Motion to Continue.**

The thrust of Debtor's argument on appeal is that had the Bankruptcy Court granted her motion to continue, she could have adequately presented her case on the merits as opposed to seeking a dismissal which ultimately became a dismissal with prejudice. "The bankruptcy court's discretionary rulings with regard to such matters as scheduling and continuances are reviewed for abuse of discretion." *In re Dana Corp.*, 574 F.3d 129, 145 (2d Cir. 2009). The Second Circuit "affirm[s] orders denying

16

continuances unless there is a showing both of arbitrariness and of prejudice to the [moving party]." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 100 (2d Cir. 2001).

In evaluating the propriety of a denial of a continuance due to an unavailable witness, the court must evaluate an array of factors including whether the moving party was diligent and whether the witness was essential. As a leading treatise observes:

> [D]istrict courts have held that a request for a continuance properly may be denied when the party seeking it has had ample time for preparation before the trial date, or the request for a continuance was not made until the last possible minute, or the testimony of a missing scheduled trial witness was available in the form of a deposition or with reasonable effort could have been obtained in that form, or the denial of a continuance was not shown to be prejudicial to the party requesting it, or there was some other consequential reason the trial court felt was persuasive for refusing to grant a continuance of the case. Also relevant in evaluating the propriety of a denial of a continuance are whether there have been prior delays in the progress of the action and the reasons therefor, the time constraints on the district court and opposing counsel, as well as the lack of good faith conduct or actual misbehavior by the party seeking a delay.

9 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2352 (3d ed.)

In its post-hearing Order, the Bankruptcy Court explained that it denied the continuance because Debtor had adequate time to prepare her witnesses, the Banks had witnesses ready to testify, and Debtor did not file the motion to continue until the eve of trial. All of this was true. However, the Bankruptcy Court did not consider whether Dr. Frankel was an essential witness, whether Dr. Frankel's testimony was available in another form, and whether the Banks' proposal that their witnesses proceed on the scheduled hearing dates would have cured any prejudice to them if Dr. Frankel's testimony was presented on a different date.

Debtor moved for a continuance promptly upon receiving notice that Dr. Frankel was unavailable, and neither the Bankruptcy Court nor the Banks explained how a brief continuance would have significantly disrupted their schedules. There is no evidence that Debtor acted in bad faith in requesting the continuance although she clearly made the request at "the last possible minute." *Id.* The Bankruptcy Court noted no pattern of

previous delays on Debtor's part and there appeared to be no emergency that required the hearing to be completed on the scheduled dates.

In light of the admitted violations of the automatic stay and the Banks' willingness to continue the hearing provided their witnesses could testify on the scheduled hearing dates, the denial of a continuance so that an essential witness could testify within days of the scheduled hearing appears unwarranted.[7] Because the Bankruptcy Court considered only the prejudice to the Banks in denying the continuance, it erred in failing to consider the prejudice to Debtor. It also erred in failing to consider whether a lesser sanction was available. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (ruling that "where excusing a party's dilatory conduct would have the effect of causing another party to incur additional costs that it would not have otherwise incurred, it may be appropriate for the court to shift those costs to the party at fault.").

In the absence of an adequate analysis of the competing factors, including prejudice to Debtor, the denial of a continuance appears arbitrary and unduly prejudicial. *Farias*, 259 F.3d at 100. On remand, the Bankruptcy Court is directed to consider whether a continuance should have been granted in light of its further decision to dismiss the case with prejudice as the two issues are inextricably intertwined.

---

[7] The Bankruptcy Court denied as moot the Banks' motion for sanctions seeking to preclude Dr. Frankel from testifying. However, the court's denial of a continuance had the same effect. In determining whether to exclude an expert witness's testimony based on a discovery violation, a court must consider the following factors:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

### F. Whether the Bankruptcy Court Abused its Discretion or Committed an Error of Law in Dismissing with Prejudice.

Debtor asks the court to conclude that the Bankruptcy Court either abused its discretion or committed an error of law by dismissing the case with prejudice. The Banks contend that Debtor requested dismissal and thereafter did not object when the Bankruptcy Court decided to dismiss with prejudice. They further argue the Bankruptcy Court properly converted Debtor's motion to dismiss into a motion to dismiss with prejudice because it informed Debtor of the consequences of dismissal with prejudice, allowed her two ten-minute recesses to consider her options, and would have permitted her to withdraw her motion and proceed with the scheduled hearing had she decided to forego dismissal with prejudice.

"[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *see also* Fed. R. Bankr. P. 7041 ("Rule 41 F.R.Civ.P. applies in adversary proceedings[.]"). In this case, the Bankruptcy Court's explanation of why dismissal with prejudice was required was "the bank and the credit union have prepared for trial, they're here, they're ready to proceed today. This is your opportunity." (Doc. 3-41 at 7:14-7:16.) As Debtor affirmatively sought dismissal, the only issue is whether the Bankruptcy Court erred in converting Debtor's motion for a dismissal to a dismissal with prejudice.

"[A] district judge may convert a dismissal sought to be entered without prejudice to one with prejudice." *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988). The Second Circuit has held that "fundamental fairness requires interpreting Rule 41(a)(2) to afford the plaintiff an opportunity to withdraw his motion and proceed with the litigation in the event that a district judge proposes to convert a voluntary dismissal to one with prejudice." *Gravatt*, 845 F.2d at 56. The court has further observed that "[v]oluntary dismissal without prejudice is [ ] not a matter of right." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). However, generally a dismissal is without prejudice unless the defendant will suffer prejudice. *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d

19

Cir. 1996) ("A voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed if the defendant will not be prejudiced thereby.") (internal quotation marks omitted).

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). The first line "indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (internal quotation marks omitted). The second line requires "consideration of various factors, known as the *Zagano* factors." *Id.* (internal quotation marks omitted).

> The *Zagano* factors include: (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.

*Kwan*, 634 F.3d at 230 (internal quotation marks omitted).

In this case, the Banks articulated no "plain legal prejudice" that they would suffer from a dismissal without prejudice "other than the mere prospect of a second lawsuit." *Kwan*, 634 F.3d at 230. Accordingly, under the first line of authority, dismissal with prejudice was not warranted. With regard to the second line of authority, most, if not all, of the *Zagano* factors favored a dismissal without prejudice.

The first *Zagano* factor asks whether the plaintiff acted with diligence. "When analyzing whether a party was diligent in bringing a motion, courts have focused on whether or not the moving party encouraged the non-moving party to continue discovery without any intention of pursuing its claims." *Omega Inst., Inc. v. Universal Sales Sys., Inc.*, 2010 WL 475287, at *3 (W.D.N.Y. Feb. 5, 2010). "In addition, courts consider such factors such as the length of time an action has been pending[;]" however, this "is not a dispositive factor." *Id.* Here, Debtor brought the motion to dismiss as soon as it became apparent that the Bankruptcy Court would not continue the scheduled hearing and would require Debtor to proceed without her expert witness. She thus sought dismissal immediately upon notice that she would be severely hampered in pursuing her

claims. *See Ascentive, LLC v. Opinion Corp.*, 2012 WL 1569573, at *4 (E.D.N.Y. May 3, 2012) (observing that "[a] better measure of diligence [than the time the case has been pending] is whether a plaintiff moved to dismiss . . . within a reasonable period of time after the occurrence of the event that led to the plaintiff's decision not to pursue the action."). At the time of Debtor's motion to dismiss, the case had been reopened for approximately three months. Debtor was thus diligent in bringing her motion.

The second *Zagano* factor asks whether the plaintiff's conduct in seeking dismissal was "unduly vexatious." Courts in the Second Circuit have characterized this factor as requiring "concrete evidence of . . . ill-motive on plaintiff's part" rather than the court's mere disapproval of "plaintiff's litigation tactics." *GFE Global Fin. & Eng'g, LTD v. ECI Ltd. (USA)*, 291 F.R.D. 31, 37 (E.D.N.Y. 2013) (citation omitted). Prior to seeking dismissal, Debtor filed two motions to disqualify opposing counsel, both of which, while disfavored, appear to have been supported by a good faith factual and legal basis. During this same time period, Debtor sought reconsideration of the Bankruptcy Court's Order denying reinstatement of the automatic stay which conflicted with the Bankruptcy Court's verbal pronouncement of the law. Debtor's motion to reconsider was thus an appropriate request to the Bankruptcy Court to clarify and reconsider its prior ruling. Thereafter, Debtor requested a brief continuance due to her expert witness's unavailability, of which she had just been informed. The expert witness proposed an alternative date in the near future on which she would be available to testify. The continuance was the first and only continuance Debtor sought with regard to the July 1 and 2, 2014 hearing dates. In light of Debtor's self-represented status, it would be unfair to characterize her conduct as "unduly vexatious."

Application of the third *Zagano* factor reveals that there is no evidence in the record that the Banks incurred an expense in preparing for the scheduled hearing that could not have been recovered by merely permitting them to present their witnesses on the scheduled hearing dates and continuing the remainder of the hearing so that Debtor could present her expert witness. Indeed, the Banks proposed that any continuance be granted on this basis. There is thus scant evidence that a dismissal with prejudice was the

21

only means of alleviating any prejudice to the Banks. *Cf. Deere & Co. v. MTD Holdings, Inc.*, 2004 WL 1432554, at *2 (S.D.N.Y. June 24, 2004) (ruling dismissal with prejudice was warranted where the case had been pending for almost four years, there had been sixty-two depositions taken, thousands of documents had been produced by both parties, significant motion practice and decisions thereon had occurred, and the defendant had incurred $6 million in attorney's fees).

The fourth *Zagano* factor addresses whether a dismissal without prejudice will result in "the duplicate expense of relitigation." In this case, presumably neither party had yet incurred substantial expenses. Relitigation of the merits of Debtor's claims would therefore not unduly duplicate the expenses of litigation.

Finally, under the fifth *Zagano* factor, Debtor's explanation of the reason she sought dismissal was credible and was supported by a letter from her expert witness. Although the Banks characterized this excuse as "a little bit light with respect to [the expert witness] not being available[,]" (Doc. 3-41 at 3:3-3:4), the Bankruptcy Court made no such finding. Debtor's representation to the Bankruptcy Court that her expert witness was essential to the presentation of her damages claim was also well founded. She sought dismissal only because the Bankruptcy Court refused her request for a brief continuance. Although the Bankruptcy Court afforded Debtor two ten-minute recesses to consider the consequences of a dismissal with prejudice, Debtor had no opportunity to seek legal advice or brief whether a dismissal with prejudice was required. There was no emergency that required an immediate decision by Debtor or an immediate dismissal by the Bankruptcy Court. Moreover, it would be unfair to conclude that Debtor *agreed to* a dismissal with prejudice. A dismissal with prejudice was the only option presented to Debtor other than proceeding without her expert witness. Debtor's explanation of the reason for dismissal was therefore adequate.

Although not squarely contemplated by the *Zagano* factors, the Bankruptcy Court also should have considered the merits of Debtor's claims and the prejudice she would suffer from a dismissal with prejudice. *See Hoolan v. Stewart Manor Country Club, LLC*, 887 F. Supp. 2d 485, 496 (E.D.N.Y. 2012) (dismissing with prejudice under Rule

22

41(a)(2) because the plaintiff's claims "appear to lack merit, and given the late stage of
this case, defendants would be prejudiced if these claims are dismissed without prejudice
at this point."). In many respects, this was the same inquiry that should have preceded
the denial of Debtor's request for a continuance. Brattleboro Savings admitted that it
violated the automatic stay, River Valley stated it was in a similar position and conceded
it had contacted Debtor, and Debtor had prepared a detailed timeline of the Banks'
violations. Debtor thus had a reasonably strong case with regard to liability. Once
liability was established, neither bad faith nor maliciousness was required for a finding of
actual damages,[8] an award of costs, or an award of attorney's fees. *See* 11 U.S.C.
§ 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this
section shall recover actual damages, including costs and attorneys' fees, and, in
appropriate circumstances, may recover punitive damages."); *see also In re
Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) (holding as a matter of
first impression "any deliberate act taken in violation of a stay, which the violator knows
to be in existence, justifies an award of actual damages. An additional finding of
maliciousness or bad faith of the offending creditor warrants the further imposition of
punitive damages pursuant to 11 U.S.C. § 362(h)."). The merits of Debtor's claims and
the prejudice she would suffer if those claims were extinguished thus also weighed in
favor of a dismissal without prejudice.

Neither briefing nor oral argument preceded the Bankruptcy Court's decision to
dismiss Debtor's case with prejudice. The only notice Debtor had of this drastic outcome
was a verbal motion made by the Banks just minutes before dismissal with prejudice was
granted. As a self-represented litigant, Debtor was entitled to special solicitude and
should have been afforded an opportunity to seek legal counsel to address whether a

---

[8] In the absence of evidence of actual damages, Debtor may have been entitled to nominal
damages. *See In re Young*, 497 B.R. 904, 916 (W.D. Ark. 2013) ("Relief in the form of nominal
damages is appropriate as relates to the automatic stay."); *In re McCool*, 446 B.R. 819, 824
(N.D. Ohio 2010) (holding that although the debtor did not prove damages from pain and
suffering "an award of legal fees and nominal damages [was] appropriate" where the creditor
violated the automatic stay and discharge injunction).

dismissal with prejudice was warranted. In the facts and circumstances of this case, the Bankruptcy Court's decision to dismiss the case with prejudice without considering the applicable law and affording Debtor a meaningful opportunity to oppose that outcome was an abuse of discretion. Accordingly, the court remands this case to the Bankruptcy Court to reconsider whether a dismissal with prejudice is warranted under applicable law.

## CONCLUSION

For the reasons set forth above, the court REVERSES the Bankruptcy Court's denial of Debtor's request for a continuance and its dismissal of this case with prejudice and REMANDS the case for reconsideration of those issues consistent with applicable law. The remaining decisions by the Bankruptcy Court raised in this appeal are AFFIRMED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _12_ day of December, 2014.

Christina Reiss, Chief Judge
United States District Court